via zoom due to the COVID crisis. My name is Nathaniel House and presiding over this case with me are Justices David Ellis and Justice Eileen Burke. With the parties who are going to make a presentation today please state their names and the parties they represent beginning with the appellant. Good morning, afternoon. My name is Ginger Odom from the Office of the State Appellate Defender. I represent the appellant Anthony Mitros. Good afternoon, your honors. Assistant State's Attorney Alan Spellberg representing the people of the state of Illinois. Thank you. Because this case is being heard via zoom we altered our normal procedure. We're going to proceed in this manner. Each side intern will be given 10 minutes of uninterrupted presentation time and after that time is concluded the judges will ask questions then we'll go to the appellee and then after that the uh in the same procedure judges ask questions and then after that the uh appellant will be allowed a short uh rebuttal time. Does anyone have any questions about how we're going to proceed? No your honor. All right very well then Miss Odom you may proceed when you're ready. Thank you. Good afternoon. May it please the court, council. 846 days. Anthony Mitros has been deprived of his liberty for two years, three months, three weeks, and three days past the maximum legal term for his crimes. Today he remains locked in a cell at Pontiac Correctional Center on a term of life without parole that this court has twice determined was not authorized by statute. The due process guarantees in the federal constitution and in the Illinois constitution require a remedy for this illegal and unconstitutional deprivation of liberty. The certain remedy guarantee in article 1 section 12 of the Illinois constitution requires the same. There that section states every person shall find a certain remedy in the laws for all injuries and wrongs which he receives. He shall obtain justice by law freely, completely, and promptly. Mr. Mitros seeks that justice by law and remedy from this court now. This court has the The trial court's denial of Mr. Mitros' motion for leave to file a successive petition was error. First of all, the trial court found that Mr. Mitros had not met cause and prejudice because all the facts were known at the time of his plea. This is simply not the case. At the time of the plea all the parties erroneously believed that residential burglary was on the list of forcible felonies to qualify Mr. Mitros for the death penalty. In fact, two years after Mr. Mitros' plea, the Illinois Supreme Court and Sims recognized that residential burglary was not on the list of predicate felonies. Thus, the trial court's determination that all facts were known was clear error. This court's ruling 28 years later acknowledging that Mr. Mitros' term was illegal combined with the procedural barrier erected by Castleberry established cause. However, even if this court finds that Mr. Mitros has not established cause, this court may excuse his forfeiture under the fundamental fairness principles outlined in Pritz and Barger. This court may address his claim because it is necessary to prevent a fundamental miscarriage of justice. If there was ever a time to forgive forfeiture, it is now when a human being, Mr. Mitros, is sitting in prison for longer than the law permits under these circumstances. Now, the trial court was also wrong for another reason. The trial court found that this matter was barred by, that the issue was barred by race judicata. Now, while it is true that this court previously ruled on the merits of Mr. Mitros' sentencing claim in his 214-01, here, I mean there in the 214-01, this court agreed with him that life without parole was not an authorized term. Thus, this court's prior ruling should act as race judicata, but to bar the state from trying to re-litigate this matter of settled law. In fact, it's not just race judicata, it's also law of the case. Now, the state says that law of the case requires a final judgment on the merits. This court entered a final judgment on the merits in Mitros 2 that life without parole was not a term authorized by statute. This court's final judgment on the merits in Mitros 2 acts as law of the case and bars re-litigating this issue because it's already been decided by this court. Now, in Mitros 2, this court remarks that perhaps Mr. Mitros should seek relief for his unauthorized term through alternative means. And, having been denied relief when he took the mandamus route, his success petition is the alternative means for relief for this wrong. And notably, the state argued in its supplemental brief on remand from the Illinois Supreme Court that a successive post-conviction petition was the appropriate remedy for Mitros to pursue his claim. Now, turning back to law of the case, the state argues that this court's prior decisions do not act as law of the case because they were merely dicta. This is incorrect. When the Illinois Supreme Court denied the state's PLA in Mitros 1, the language of that order remanded the case back to this court, and this is what the language said, reconsider its judgment in light of Castleberry to determine if another result is warranted. That is, the Illinois Supreme Court remanded not just to consider the relief, as the state would have us believe, but to reconsider the judgment. Then, in Mitros 2, this court reaffirmed its determination that the sentence was not authorized. That determination is not dicta, but a final judgment on the merits, and thus, law of the case. The bottom line here is that under the terms of the plea, Mr. Mitros was not eligible for the death penalty, and as such, was not subject to life without parole as an alternative to the death penalty. Instead, the longest legal term available for Mr. Mitros' plea was 60 years. Because he has already served the entirety of the longest maximum term, we ask this court to act under its authority granted by 615B4, and in the interest of judicial economy, to vacate the life without parole term, enter a sentence of 60 years, and order his immediate release. This is the appropriate remedy in this case when the record needs no additional development. Thank you. Justice Ellis, do you have any questions? I do not. Justice Burke? No, I do not. Thank you. Counsel, how do we know that your client is entitled to this good time? He was sentenced to 60 years. 60 years has not been served yet. How do we know that he's entitled to be released now? Well, I see what you're saying. I know that his sentence at the time was subject to day-for-day credit. There's nothing in the record to indicate that any of his good time credit has been revoked, nor has the state addressed that claim. The state has not objected on that grounds. Now, he knew about this sentence earlier. Why isn't it a bar now in this case? Because he previously filed a post-conviction petition. Oh, right. So you're asking why it's not waived? Yeah, why it's not waived. Okay. I see what you're saying. It's true that he did not waive that. I mean, he did not enter this in his first post-conviction petition, but under the 214-01, he alleged that he had only become known about it. And Sims supports that assertion of his ignorance because in Sims, which occurred two years after the entry of his guilty plea, that's when the Illinois Supreme Court finally recognized that residential burglary was not a forcible felony for purposes of death penalty eligibility. So we at least have that period of And all the parties at the time of his guilty plea were also under the mistaken impression that residential burglary was a forcible felony. So while it's true that he did not address this in his initial post-conviction petition, this court can overlook his forfeiture for not raising it then under the fundamental fairness principles in Pitts and Barger. So that's the reason that it's not waived because it's necessary to address this to avoid a fundamental miscarriage of justice. The state argues that fundamental fairness only applies to actual innocence and death penalty cases where the person was raising issues that would not have resulted in a death penalty. What is your response to that? Well, the state says that, you're right, the state does say on page 20 of its brief that Pitts and Barger is limited to actual innocence, but this is not a complete reading of Pitts and Barger. As you notice, the second clause of that sentence that says, or in the context of the death penalty, the petitioner must show that but for the claimed constitutional error, he would not have been found eligible for the death penalty. That is exactly on all fours here. Without the constitutional violation of his due process rights to not be found eligible for a sentence that the legislature has determined was not appropriate, then he, I mean, this falls completely within that second clause of Pitts and Barger. This is in the context of death penalty eligibility. Pitts and Barger doesn't limit by its language only to those cases where a person actually got the death penalty. Instead, it talks about the eligibility phase. And during the eligibility phase, this is exactly when this error occurred. All right. I have nothing else. Justice Ellis, Justice Burke. Anything? Okay. All right, Mr. Spellberg, you may proceed when you're ready. Thank you, Your Honors. Again, Assistant State's Attorney Alan Spellberg representing the people of the state of Illinois. Counsel's argument is entirely premised upon assumptions about what occurred, which are not borne out by the record in this case. The record does not demonstrate that everyone believed that residential burglary was an appropriate predicate felony for death penalty eligibility under the murder in the course of a felony aggravating factor. What's important to remember about this case is that the record is actually missing several important aspects. Most importantly, it is missing the actual page of the finding of death penalty eligibility. We'd also, as we point out in the brief, the defendant in this case was charged with multiple counts of first degree murder. Only one count charged him with felony murder under Section 9-1A3. And that was premised upon armed robbery, not residential burglary. And then as a result, after the lengthy, apparently lengthy hearings involving the motion to quash and the motion to suppress, neither of which we have in the record, the trial court informed the defendant at a conference that if he would be willing to plead guilty, the court would impose a natural life sentence. That was over the objection of the state. The State's Attorney's Office did not agree to that, but yet the court said that he believed that it was an appropriate sentence in this case. And if the defendant would plead guilty and accept his offer, a natural life sentence would be imposed. Then at the guilty plea hearing, when the court asked for a factual basis, the State's Attorney specifically said, Judge, you've heard many facts of this case from the two motions. We would ask you to incorporate those as a factual basis. And then there's very little further detail given. And so there was no objection to that factual basis. It was accepted by the courts. And then the court found him guilty of first degree murder. Again, it's not clear precisely which count the court ultimately sentenced him on count one, which was the intentional murder. But as the record reveals that there was that charge, I note in my brief that it seemingly was the felony murder charge was subsequently dismissed. But as I read in the record this morning, actually, the only counts that were now lead were the counts five through 13, that counts one through three. So this record is very ambiguous as to what occurred at the time. And that's the key to this case is the ambiguity defeats the defendant's ability to prove his claim. We don't know for a fact that the defendant was found eligible based upon residential burglary. The record doesn't establish that. We don't know for a fact what the basis of the eligibility finding actually was because the one page where the finding would occur does not appear in the or when he knew it. Instead, what we have is the trial court's imposition of a natural life sentence pursuant to an agreement that the defendant accepted pursuant to an offer that the defendant accepted from the court. The defendant then was sentenced to the natural life plus 15 years or an additional 15 years to be served concurrently for the residential burglary. And then the defendant did nothing. He was properly admonished. He did nothing to withdraw or to indicate anything. In fact, there was no post-conviction filed until 2003. That was his initial post-conviction petition. And the only claim that he raised there was the failure to properly admonish him under rule 605. He took an appeal. The only claim he raised there was the failure to properly admonish him and this court rejected it. It wasn't until 2011 that this first claim of not statutorily authorized sentence was raised. And ultimately, as this court knows, in 2016, the court held under Castleberry, it could not grant the relief because despite the defendant's allegations that the sentence was void, it was no longer void. Now, yes, we acknowledge and we acknowledge in our brief that this court did find that it was statutorily unauthorized, but we claim that that was dicta because it was unnecessary to reach the conclusion. What the case law says is that for a 214-01 petition, if it is filed more than two years after the date of the judgment, the only way you can establish the claim is if the claim was void, if you're claiming the judgment itself was void. Since Castleberry demonstrated that the judgment was not void and defeated the defendant's allegations of voidness, there was no reason for this court to go on to consider, or in the instance of the opinion, to consider even before addressing voidness. There was no reason for this court to address the substance of his claim of statutorily unauthorized. That's why we claim that it is dicta in our brief. We do admit that it was judicial dicta because it was a decision that was made, that was reached by this court after briefing by the parties, but judicial dicta is still dicta and does not require that it be followed if it is shown to be erroneous or palpably erroneous, which is one of the other exceptions for the law of the case doctrine. And as we said in our brief, we believe that it was shown to be erroneous, that in this instance, that there has not been sufficient demonstration of a statutorily unauthorized sentence. The sentence itself is authorized for the offense of first-degree murder if there was a statutory aggravating factor available. The record does indicate the defendant was charged with an armed robbery. One of the murder counts was premised upon armed robbery. That murder count was not dismissed by the people, and I apologize for the error in my brief. If you look on page 18 of the transcript, you will see that it only counts five through 13 were dismissed, not count three. And so when we're looking at an ambiguous record from a guilty plea which occurred more than 30 years ago, how are we to establish, how is the defendant able to meet his very high burden of demonstrating an error? And the type of error that he's alleging matters as well, because this is one of statutory non-compliance. This is a claim that the sentence is not statutorily authorized. He's trying to claim that it is a due process violation, but as a due process violation, it is subject to all the other procedural requirements. It is subject to all the procedural barriers. One of the procedural barriers in this case is the fact that by pleading guilty in exchange for the court's offer of natural life, he waived all non-jurisdictional errors that may have occurred. That was what he accepted. He stipulated to the death penalty eligibility in this case. That's also something that is binding upon him. He can't now come around and undo that. And so it's for that reason that we believe that the trial court properly denied the motion for leave to file successive petition because the defendant, one, we don't believe there's any truth to the merits of the case, but two, because he couldn't establish the cause and prejudice. As the trial court found, the facts known to the defendant, the law which was known, were available long before he filed his first petition in 2003. He didn't raise it then. And that's the definition of cause and prejudice. He had to identify something objective to him which precluded him from raising it earlier. And he hasn't even attempted to do that. And so that's why we believe this court should affirm the ruling of the trial judge denying leave to file successive petition. Thank you. Justice Ellis, do you have any questions? Just a few. Good afternoon, Mr. Spellberg. Good to see you. Good to see you too. So in the, correct me if I have this wrong, it was in the first opinion, the 2014 opinion in Mitros where we made the ruling that you are saying is judicial dicta, I understand. The 2016 ruling is the one that's judicial dicta. Yeah, maybe I've got my dates wrong. We made a ruling that residential burglary was not listed among the forcible felonies for death penalty eligibility. Was that 2016? Yes, in both, in both opinions, your honor. In 2014, this court ruled that the defendant was, the defendant's natural life sentence was void because it was premised upon residential burglary. And so therefore it was statutorily unauthorized. We filed a petition for leave to appeal to the Illinois Supreme Court, which after Castleberry, the Supreme Court remanded the matter back to this court to reconsider in light of Castleberry. At that point, this court issued a new decision. One finding again, that it was statutorily unauthorized, but two finding that the claim was not void and therefore could not be During either of these appeals, did the state call to this court's attention? The fact that the record was unclear with regard to whether residential burglary was the predicate felony? Your honor, in the brief, we did point out that the record was missing pages. I don't believe that we made the specific point about the ambiguity that existed at the time. Okay. I mean, you're, you're, you're making it now, but I, I, I wonder if there is any question of forfeiture or waiver. Forfeiture would be the better word on, on behalf of the government. If you, you know, we've been kind of living with this case for a while. And certainly, Mr. Mitros has been living with this case under the assumption that he was convicted under, with using the predicate felony of residential burglary. You're now making a perfectly appropriate argument. I'm not suggesting otherwise that the record is unclear, but, but, but, you know, where has the state been on this question? Well, your honor, maybe if I could just clarify. Yeah, please. In my recollection from the briefs, which I filed back in 20 for the 2014 and 2016 was that we did point out that he was eligible that he could be eligible under armed robbery. We did point out that parts of the record were missing. And we did point out that, um, that it's, he hasn't met his burden of establishing a clear demonstration of voidness of residential that it's premise on residential Berkeley. I, what I, what I don't believe is I don't believe I was as forthright or as demonstrative in my assertion of the ambiguity as I have been this morning. Okay. And I'm not trying to be critical. I'm more just trying to understand, you know, um, it's, it's, it feels like this position you're taking is coming a little late in the game. Um, I mean, we have twice ruled under the, under a certain presumption. And if the state and I, and I can go back and look myself, but if the state has not, I mean, look, if, if we made that fundamental of an error, I would expect a PFR from you immediately saying, wait, wait, wait, who said anything about residential burglary? The record doesn't say that. I mean, we, sometimes I hate to, we hate to admit it, but sometimes we make mistakes like that kind of basic fundamental misses some mistakes or, or malassumptions. And usually the parties call that to our attention immediately. And we, we either change our ruling or at least change, you know, what we've written, we withdraw and supplement. Um, and if that didn't happen here, I, I, I guess I'm left with the question of, you know, how are we supposed to to not bring that to our attention? Well, your honor, if I may, um, as I said that we did fight this, the court in the 2014 decision reached a conclusion based upon the, its findings, its review of the record. We disagreed with its ultimate conclusion. We sought a petition for leave to appeal. It was remanded back to this court, um, to reconsider in light of Castleberry. At that point, we made additional arguments that were premised upon the legal claims that could be in a non void judgment type of argument, primarily the arguments regarding the waiver and the guilty plea, the stipulation, things like that. Um, and so I, I think that, and then this court ultimately ruled it was not void. And so what we're now dealing with is we're, we're back to square one, because if it wasn't void in the first place, then the two 1401 could not ever get to the merits. And so because we're now back to square one, you can look at the record fresh. You can look at a new and see whether or not it is sufficient for the defendant to meet his burden of establishing cause and prejudice of a constitutional violation. Um, and that's, that's, what's different about this case at this time. And so I, I don't believe that we're precluded from making these arguments. Um, and as I said, we've admitted that, that this court reached that conclusion and we're demonstrating why it's erroneous. Um, so, and the only other thing I would add is at the time of the 2016 ruling, uh, it was actually initially issued as my recollection is a rule 23. We filed a, a, a motion to publish because the ruling regarding the Castleberry aspect was actually very significant from our perspective. And so yes, there is that language regarding the, um, I'm sorry. Yes, there is that language regarding the, uh, the residential burglary. But as I said, we always believe that as dicta, the significantly more important from our perspective of the 2016 ruling was the, uh, interpretation and application of Castleberry. Okay. Uh, Dave, you're muted. I think I have lost my connection. Can you hear me? Can I jump in here with a question? Dave, are you finished? I've lost my connection. Okay. All right. Let's, let's proceed with Eileen Burke and see if justice Ellis can recover. So you're telling us to go back and look at the record of fresh that we can go ahead and start from ground zero. Tell me what part of the record is missing. And even if we go back and look at this record, are we going to be able to and if it was used as the predicate? Um, well, most significantly what's missing from the record is, is I believe page 13 of the transcript of the guilty plea, which is the point where the judge finds the defendant eligible for the death penalty. Um, there is all that occurs on the previous page is a determination or, or reference the fact that there is a stipulation that he is eligible for the death penalty, but the judge doesn't accept it. And as counsel argues in her reply brief, there has to be a finding. We don't know what the finding is. We can't see it because it's not in the record. It's not our burden to provide that record. It's the defendants. Um, and so we, we can't see exactly what the finding was. Instead, there's an assumption that it's based upon, um, residential burglary. That assumption admittedly is supported by the, the next date when sentences imposed, when the judge does refer to both felony murder and residential burglary, um, that he was found guilty of both felony murder and residential burglary. And it was, um, was, uh, deemed eligible for the death penalty based on that. But again, as I said, the only felony murder account in this case involved armed robbery. It did not involve residential burglary and we did not amend the charges to, to make it premise upon residential burglary. So is it your position that the whole residential burglary issue is irrelevant or it didn't impact the sentence on the felony murder? Not, I don't want to say that it's irrelevant. What I'm trying to say is that there's no proof and there's no certainty that the defendant was found eligible premised upon residential burglary. Um, the fact that he was charged with felony understood at the time that we could not allege felony murder premised upon a residential burglary. And this was before Sims, obviously. Um, yes, absolutely. There's indications and references to the residential burglary throughout the, throughout the limited record that we have here. But again, that limited record shouldn't be held against the state in this instance. It has to be held against the defendant as the appellant. It's his burden to prove these claims and he hasn't done that yet. Thank you. Justice Ellis. Yeah, I apologize. I hope this doesn't happen again. Um, I, I'd almost completed my questions. Um, Mr Spellberg, um, let me ask you a couple more. Um, if the record did in your view accurately reflect that or, or, um, adequately reflected that this murder was premised on residential burglary, what would be your position? Would you be standing in the way of relief here? Uh, your honor, that is a very interesting question. And I've been trying to, to figure that out myself. Obviously, if the record indicated that the death penalty eligibility was premised upon residential burglary, we would acknowledge that error. But the second part of the question is, would that be sufficient to establish cause and prejudice? I'm not entirely certain. And I'm trying to be honest about that is because what we know about the post conviction hearing act, whether it's in a successive petition or an initial position is that the mere fact that defendant has a meritorious claim might not be enough to justify granting relief. That's why we allow for the, um, dismissal at the, in an initial petition for untimeliness, you can have a meritorious claim, but if you were culpably negligent and failing to bring it, it can be dismissed for timeliness. Likewise for a successive petition, if the defendant fails to meet his burden under cause and prejudice, he, even if there is merit to his ultimate claim, the cause and prejudice is the threshold question that has to be addressed first. And if the defendant can't prove that, then, then it's not. Now I recognize I'm speaking theoretically here as how it goes, what we would decide and how, what we would it's likely that we would have conceded it if that's the case, because that would be the, the appropriate thing to do, I would think in some instances, but I don't know for certain that that's what the decision of the state's attorney would be in that hypothetical scenario. If I appreciate that. Um, so if you're right about this, is the defendant out of luck? Is there nothing he can do? Is he going to spend the rest of his life in prison, even though, um, it may very well be true that he is spending time in prison illegally. If I can just ask for a slight clarification, you say, if I'm right about this, what is this referring to? Well, I understand. I guess. So you're, you're saying that the premise of the entire argument is, is not, has not been proven because they have not adequately shown that residential burglary was the, the predicate forcible felony. So I suppose if that's, if that were true, then I suppose, um, you would say, yes, he should be in prison for the rest of his life, right? Yes. And I, and I don't think that we can lose sight of the fact that he, that he did plead guilty in exchange for the court's promise of the natural life sentence, that he accepted that he, and he pled guilty knowing that he would be sentenced to natural life. And so there is some estoppel components related to that as well. And I know that council claims in her reply brief, that this is an open plea and not a, not a negotiated plea. Uh, what I would say is that this type of plea in 1989, what was sort of known as a Cook County negotiated plea, where it was the judge who was making offers, even though rule 402 didn't really authorize it. Rule 402 didn't authorize judges officially to make those types of offers until, uh, I believe 2013 or 2014. But what was occurring here was very much of the defendant choosing to accept a particular disposition in exchange for his guilty plea. That is the classic example of a negotiated plea. Okay. Thank you very much. Counsel. Justice Burke. No other questions. Thank you. Okay. Uh, you, you stated briefly that there's, uh, no evidence of what the finding was that made him eligible. Isn't it the fact that the armed robbery charge was not a price in that evidence that the finding was based on the remaining charge, which was burglary. I mean, how can you be found eligible for armed robbery when that was a count, which was dismissed. So your honor, as we state in our brief, there is plenty of case law recognizing that you can be found eligible for a murder in the course of a felony, even if you've never even been charged with that. And the fact that it had been now lead, um, would doesn't defeat that point. But as I said, I would ask this court to look at page 18 of the transcript and you'll see that the only counts that were actually now lead were counts five through 13, which was not the, uh, uh, count three murder in the course of an armed robbery. Um, you know, yes, we did now lead the armed robbery count when there's actually discussion with the state's attorney at that moment of the judge saying, what are you going to do with the armed robbery count and the state attorney says, yes, we're going to now leave that at this point. Um, and notably that happens after the finding of eligibility. So there was a discussion of the armed robbery after the eligibility. Um, again, and this is why I'm saying this, this ambiguity really raises questions as to what actually happened here. Um, and, and fortunately this was a very serious case in which we were seeking the death penalty and yet nobody thought how the record would appear years later. And so we are all looking at this trying to figure out what's going on. All right. To help me, let's, let's do a hypothetical. Let's, let's suppose that the death penalty was still in effect in Illinois and this defendant fled an open plea, but instead of getting 60 years, he had been given the death penalty. And now he's before saying, wait a minute, I'm not eligible for the death penalty. It's residential burglary that I'm on. And therefore that was not authorized. The death penalty was not authorized. Would you, would you still be opposing based on the arguments that you're making today? Uh, based on the record that looks exactly the same as this, we would certainly be saying that it wasn't clear enough that the, the record would be ambiguous in that regard. I'm sorry. Go ahead. No, I just, I just want to stress that it's about the, the, the, what can be gleaned from the record 30 plus years later in terms of whether or not, uh, a state's attorney or Cook County state's going to be standing up trying to defend the death penalty, which was imposed, um, based upon a questionable, uh, aggregating factor. I can't imagine that any state's attorney, whether it's the current state's attorney or any of the previous ones that I've served under would, would actually take a position in, in a actual death penalty case. And I do think that's actually a very significant point regarding the cause and prejudice analysis and the language and Pittsburgh as well, because those are based upon Sawyer versus Whitley from the U S Supreme Court, which is one of the many cases, which stresses death is different that the court had always viewed defendants who have been subject to the death penalty to be different than those who are, have not been sentenced to the death penalty. And so I think that that's an important recognition about the, the fundamental fairness exception. Well, Mr. Mitros is arguing something similar. His life is gone being spent in a correctional institution. And from his viewpoint, he's being incarcerated. Uh, he's being subject to cruel and unusual punishment by being incarcerated under a sentence, which was not authorized by statute. And this is not something where he's going to get out in 10 years or 15 years for life. And, uh, isn't that, shouldn't the same It is important to remember that at the time that he entered the voluntary guilty plea in exchange for the natural life sentence, he believed that the death penalty was a possible, if not likely outcome, given the limited facts of the case that we know. Um, and so he made a voluntary conscious decision to accept a natural life term in order to avoid any death penalty. And I don't think we can look at that decision through the lens of 2020, because in 1988, 89, the death penalty was still actively being sought and applied in, in Illinois. All right. I don't have any other questions. Justice Ellis, Justice Burke, do you have anything else? Can I, could I briefly follow up? I promise to be brief. Um, there is case law that says death is different. Uh, there's no question about that. I think what I heard you say though, is if he was, if he was going to be sentenced to death, if he was going to die based on a questionable, uh, predicate forcible felony, you don't think you would stand in the way of relief, but because instead he's spending his life in prison, under what is a questionable predicate forcible felony, um, you are standing in the way. I mean, you would, you would admit at a minimum it is, it is questioning. This is questioning, right? I mean, without a doubt, without a doubt. And so you're okay. Your office is okay. Your state's attorney is okay with somebody spending the rest of their life in prison based on a very questionable predicate forcible felony. Uh, your honor, if I could please pass that slightly. When I said that we, it would be unlikely that we would fight it if there was a death penalty case. It, and again, I stress that it was because of death is different. That's because of the finality of death. If, if a defendant receives the death penalty and if he sends to it and then it gets close to the potential for an execution, there's no further opportunity for litigation. There is nothing that would preclude the defendant from proving this with additional facts if necessary. And if he could do so, but, and that's why there's nothing wrong with asserting that the defendant's voluntary guilty plea in exchange for natural life, it should be reaffirmed at this point, rather than, um, drawing an assumption from a clearly ambiguous record and finding that the sentence is not authorized. Well, I, I would agree with you that it would be a rational decision to accept life imprisonment when you're facing death, but if you're not supposed to be facing death, but you don't know that because your lawyer missed it, then does that make us feel a little differently about the rationality of that decision? Your honor, I would, I would say that that point, if this is one, a claim of ineffective assistance, but two, more importantly, if there was no indication at all of anywhere in the record that death penalty was ever even a possible sentence in this case. But again, because of the armed robbery in the charge of armed robbery, that by itself demonstrates the death penalty from the outset of the case was a viable sentence. That's a good point. That's a good point. You're right. Um, I think that's all I can add to that real quick. It's for that reason that we have always been highlighting the armed robbery charge in both the 2014 and the 2016 aspect of this case is that the armed robbery charge itself makes a significant difference in this case because it shows that he was properly subject to at least death penalty procedures and possibilities from the outset of this case. And that therefore, when the decision to plead guilty and accept an actual life sentence at the court's offer, that was a sufficient basis for him to be found eligible. Well, counsel, I, I understand that. Um, and I, and I understand the basic rules of appellate review are that the defendant has to make an adequate record and the lack of an adequate record will be used against them. But isn't it a little troubling that not only that some clerk lost page 13 of the transcript and that alone could be the reason why this defendant doesn't get relief, but that the state didn't make a better record at trial. I mean, the, the, the state is charging this man with serious crimes and between the prosecution and the trial judge, and I suppose to some extent, the defense counsel as well, all of people who are not the defendant who's serving the time in prison, somewhere between all of these people were left not knowing what happened. I mean, isn't this the kind of a case, even though it's not death where the state might want to say, you know, we just don't have confidence that we should still be imprisoning this guy. And if we don't have confidence, if we're not sure, maybe we should do something about that. Um, I, I understand your point, your honor. And as I said, I recognize that the, the proceedings were not as clear as we appellate lawyers 30 plus years later, later would, would have liked. But at the time, it's clear that everyone understood what was happening in the case, including the judge. Everyone knew where it was going. I believe when the state's attorney said, judge, we're going to incorporate the facts that you heard from the two motions into the factual basis. Those transcripts certainly exist somewhere. I just don't believe the defendant has ever sought to obtain them. Um, or at least it has not obtained them. There was an indication in a couple of years after the guilty plea that he filed a motion for transcripts and the trial court denied it because it was out of time, but that wouldn't preclude an attempt now to obtain those transcripts. Uh, so we could learn those facts, but again, that's not, that's the responsibility of the defendant is the petitioner of the defendant is the appellant. Um, but, but, but maybe, maybe, maybe it's their responsibility, but why wouldn't the people want to know the answer to that question too? Why wouldn't the people want those transcripts? I mean, you're, you're saying yourself, Mr. Spellberg, and you're doing an excellent job today. You always do. I'm not trying to beat up on you. Um, but why don't, why doesn't the Cook County state's attorney's office want to know the answer to this? If there's a way to find an answer to this, if there are transcripts that are missing, why aren't you guys looking for them too? Um, well, your honor, I can only speak for myself and the appellate division in that regard, which is obviously we can't bring new facts in from the trial court's review. Um, but I would also say is this court knows there is just, uh, an awful lot to do with it. It's not always capable of seeking out information that that's why we require like through our conviction integrity unit and other things, we require the, the information to be brought to us for us to review it and investigate it. We, we, we can't go searching for the, the errors we, and again, if part of our role in this instance is to defend the trial court's judgment is defensible. Um, and that's, you know, cause there's no one else who's available to speak for the trial court judge. Um, and so that's our role here as well. Okay. Thank you very much. I'm, I'm, I've completed my questions. Thank you, Mr. Spellberg very much. Do you have anything else? Oh, thank you. Okay. All right. Ms. Odom, you can take a brief rebuttal. I think your mood muted. Here we go. Can you hear me now? Yes. Okay. Awesome. Um, so the first, uh, the first argument that, uh, the first point I'd like to touch on is this, is this a late claim of an incomplete record? Um, certainly the record is sufficient to make for this court to have made two, uh, findings already, a published decision and the unpublished, uh, 2014 decision. Um, and that may well be because of the judge's remarks at the time of sentencing, uh, there, the judge says on the last court date, the defendant agreed that comma, in fact, comma, a qualification factor was present whereby the defendant would be subject to the death penalty. That being the commission of the offense of residential burglary and felony murder. So that was the stipulation there that, that, um, Mr. Mr. Mitra stipulated that he was eligible for the death penalty on the basis of residential burglary. Um, he was not eligible for the death penalty on the basis of residential burglary. Um, and so therefore the record is sufficient to demonstrate that the eligibility factor that the court found and that the, that Mr. Mitra's, uh, stipulated to was that the first degree murder in count one was committed in the course of a residential burglary. Um, so, and so it's interesting that Mr. Soberg says that the record here is ambiguous about what exactly the claim was. And then he asked this court to, uh, to sort of believe his, uh, the way that he says that in 1989 trial court judges are just making up, um, plea offers, even though that was not allowed under Supreme court rule 402 only in 2012 was the Supreme court rule 402 amended to allow a trial judge to participate in the plea negotiation proceedings. So this claim about an off the record promise, um, is also not borne out by the record. And as to Mr. Mitra's having been charged with armed robbery, that's true, but that alone is not sufficient for him to be eligible for the because if you read down and nine one B nine one F says that the, um, let's see, nine one F says the burden of establishing any of the factors set forth and nine one B is on the state and shall not be proved, shall not be satisfied unless proved beyond a reasonable doubt. So here are the trial court did not make a finding beyond a reasonable doubt as to any charge of armed robbery. Instead, during the, during the sentencing hearing and during the plea negotiations, the trial court's findings were limited to first degree murder and residential burglary as the eligibility factor. So that, that is, uh, the, this claim about, um, not having to be convicted of armed robbery is true, but it conflates, um, what, what the Illinois Supreme Court found in Hampton is that even if they're, even if a person is not convicted or even charged with something that would make him or her eligible, the trial court must nonetheless make a finding beyond a reasonable doubt as to that person's eligibility on the factor to which that for which that person is eligible. Um, so again, 402, this was an open plea. There was a negotiation between the state and Mr. Mitra's and Mr. Mitra's lawyer and the state and the judge were all under the mistaken impression that residential burglary made him eligible. Um, as to the dicta, I'll just circle back on dicta. This court's findings were not dicta because the Illinois Supreme Court directed this court to reconsider its judgment. Therefore, a finding about the, uh, about whether or not the sentence was authorized was part and parcel of the judgment and was a necessary finding and was a final judgment and should be considered law of the case. Um, and the final thing is that Mr. Mr. Spellberg is again here arguing that, um, that to, you know, suggesting to this court that we just kick the can down the road, maybe in another appeal, maybe if he can get a complete record, maybe, maybe later he can get some relief. That's exactly what the state did in, uh, 2016 after Castleberry suggesting to this court that maybe post conviction would be the magic way, magic path for Mr. Mitra's to, um, to pursue relief. And Mr. Mitra's has pursued and been denied mandamus relief, which was sort of the relief, the collateral remedy that the Illinois Supreme Court contemplated, um, after Castleberry as the proper vehicle to obtain relief on an, on an unconstitutional and illegal term of years. Um, Mr. Mitra's has already served the entirety of the longest maximum term. We asked this court under its authority and six 15 B and in the interest of judicial economy to not string this out any longer to vacate the life without parole term, enter a sentence of 60 years and order Mr. Mitra's immediate release. Thank you. All right. Uh, justice Ellis, justice Burke, anything based on that? All right. All right. This case will be taken under advisement. Uh, both parties did an outstanding job in presenting the case. Uh, the case is also well briefed, um, and we'll take it under advisement and issue a decision in due course. Have a great afternoon.